[Cite as *State v. Maddox*, 2013-Ohio-1544.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98484

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ADRIAN D. MADDOX

DEFENDANT-APPELLANT

---

### JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-558633

**BEFORE:** Stewart, A.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:   John T. Martin
Assistant Public Defender
310 Lakeside Avenue, Suite 200
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Marcus A. Henry
Assistant County Prosecutor
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH   44113

MELODY J. STEWART, A.J.:

{¶1} When the Shaker Heights police arrested defendant-appellant Adrian Maddox in his apartment on charges of breaking and entering into a convenience store and stealing cigarettes and other tobacco products, they found incriminating evidence during a sweep of the apartment. Maddox asked the trial court to suppress this evidence on three grounds: that the police entered his apartment building without a warrant; that they arrested him without a warrant; and that they were unjustified in conducting a protective sweep of the apartment. The court rejected all three grounds and denied the motion, finding that there was probable cause and exigent circumstances. Maddox then pleaded no contest and the court found him guilty of breaking and entering, petty theft, vandalism, and possession of criminal tools. We find dispositive the argument that the police could not validly arrest Maddox without a warrant and reverse.

I

{¶2} The evidence at the suppression hearing showed that Maddox, wearing a tan coat and carrying a duffel bag, was spotted in the area of the store shortly after the break-in had been reported. A police officer stopped him and asked him to provide identification. At that time, the officer lacked grounds to arrest Maddox so he was allowed to leave. Afterward, other police officers viewed video surveillance of the crime and discovered that the intruder wore clothes similar to those worn by Maddox.

{¶3} Three days after the break-in, police detectives went to the multi-level apartment building where Maddox lived in order to arrest him. They did not have an arrest warrant. The detectives gained entry to the common area of the building, proceeded to Maddox's apartment, and knocked on his door. The detectives testified that Maddox opened the door and the police identified themselves. When they asked Maddox if anyone else was in the apartment, he did not answer, but twice looked over his shoulder. Thinking that someone else could be in the apartment, one detective placed Maddox under arrest while others entered and conducted a protective sweep. The arrest occurred inside the apartment because Maddox stepped back into the apartment.[1] During the sweep the detectives discovered a jacket that matched the one worn by the perpetrator in video surveillance footage of the theft and an open duffel bag containing cigarettes and tobacco products. The police did not take these items, but obtained a search warrant and then seized the jacket and duffel bag.

II

{¶4} The police are not always required to obtain a warrant to arrest and may conduct a warrantless arrest if (1) the arrestee has committed an offense in the officer's presence, *United States v. Watson*, 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); (2) the officer has probable cause to believe the arrestee has committed a felony and the arrest occurs in a public place, *Devenpeck v. Alford*, 543 U.S. 146, 152, 125

---

[1]Maddox testified that while he was unlocking his door in response to the knock, the police pushed their way into his apartment with guns drawn. The trial court did not accept this version of the events.

S.Ct. 588, 160 L.Ed.2d 537 (2004); or (3) the officer has probable cause for an arrest and the circumstances are "exigent." *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).

{¶5} Warrantless arrests in suspects' dwellings, even if supported by probable cause as is the case here, are presumptively unreasonable because they do not occur in a public place. *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It would be difficult to overstate the degree to which the courts have extended Fourth Amendment protections to the "sanctity" of the home. The United States Supreme Court has stated that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Id.* at 586. This is because "'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion'" stands "'[a]t the very core' of the Fourth Amendment." *Kyllo v. United States*, 533 U.S. 27, 31, 150 L.Ed.2d 94, 121 S.Ct. 2038 (2001), quoting *Silverman v. United States*, 365 U.S. 505, 511, 5 L.Ed.2d 734, 81 S.Ct. 679 (1961).

{¶6} However, not all parts of the house constitute areas where a person has an expectation of privacy. In *United States v. Santana*, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), the United States Supreme Court found that a person standing in the doorway of a house had no expectation of privacy when police arrived at the home to arrest Santana because "[w]hat a person knowingly exposes to the public, even in his own house or office, is not a subject of Fourth Amendment protection." *Id.* at 42, citing *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The court

reasoned that an individual voluntarily standing in an open doorway has knowingly exposed himself to "public view, speech, hearing, and touch" just as if he were standing in a public place. *Id*.

{¶7} The uncontested facts of this case, however, show that the detectives arrested Maddox inside the apartment in his hallway, so *Santana* has no application here. Although one of the detectives testified that Maddox opened the door and stood in the doorway, the evidence is undisputed that Maddox backed into the apartment and the detectives followed him inside to arrest him. Maddox was therefore entitled to Fourth Amendment protection from an unreasonable intrusion into his home.

{¶8} In reaching this conclusion, we note that Maddox's act of answering a knock on his door did not surrender his right to be free from a warrantless arrest. Some cases have found that this constitutes a "voluntary" exposure to a warrantless arrest. *See, e.g., United States v. Gori*, 230 F.3d 44, 54 (2d Cir. 2000); *United States v. Vaneaton*, 49 F.3d 1423, 1427 (9th Cir. 1995). For example, in *Vaneaton*, the police knocked on the door of Vaneaton's motel room, he looked out a window, saw the uniformed police officers, and nonetheless opened his door and stood "at the doorway but just inside the threshold." 49 F.3d at 1425. The court, relying on *Santana*, found that Vaneaton voluntarily exposed himself to warrantless arrest by freely opening the door of his room to the police. *Id*. at 1427.

{¶9} *Santana* was decided before *Payton*, and for that reason has been questioned as being "inconsistent with the spirit of *Payton v. New York*." *Hadley v. Williams*, 368

F.3d 747, 750 (7th Cir.2004).  Some courts have held that an individual does not "completely surrender or forfeit every reasonable expectation of privacy when he open[s] the door, including, most notably, the right to be secure within his home from a warrantless arrest."  *McClish v. Nugent*, 483 F.3d 1231, 1247 (11th Cir.2007).

{¶10} We agree with the view enunciated by Judge Posner in *Hadley*:  "Since few people will refuse to open the door to the police, the effect of the rule of *Gori* and *Vaneato*n is to undermine, for no good reason that we can see, the principle that a warrant is required for entry into the home, in the absence of consent or compelling circumstances."  *Hadley*, 368 F.3d at 750.  Indeed, the state's argument in this appeal is based on nothing more than a theory of "knock and arrest."  In *United States v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991), the court stated:

> A person does not abandon this privacy interest in his home by opening his door from within to answer a knock.  Answering a knock at the door is not an invitation to come in the house. We think society would recognize a person's right to choose to close his door on and exclude people he does not want within his home.  This right to exclude is one of the most — if not the most — important components of a person's privacy expectation in his home.

*Id*. at 1387.

{¶11} In short, if the *Payton* guarantee of privacy within the home is to have force and effect, it follows that answering a knock on the door does not imply a right of entry.

{¶12} The facts of this case demonstrate the point.  Maddox had no idea that the police were outside his door when he opened it, so he could not be said to have voluntarily exposed himself to view of the police.   He lived on the fifth floor of a

multi-level, apartment building. What is more, the evidence showed that the doors to the building were locked and that visitors had to be "buzzed in" for entry. The police detectives gave conflicting testimony as to how they entered the building: one detective said they were buzzed in; the other detective said that they walked into the building without being buzzed in and that he could not recall if the building doors were locked. It was clear, however, that Maddox did not admit them into the building. Maddox testified that after hearing a knock on his door, he did not look through the peephole of the door before opening it. But even if he did, the detectives were in plain clothes and did not announce themselves as the police when they knocked. So unlike the facts in *Vaneaton*, Maddox did not open his door and knowingly expose himself to view of the police.

{¶13} Furthermore, we are perplexed as to why the police did not obtain a warrant to arrest Maddox. When one detective was asked during the suppression hearing "did anyone on your strike force approach a jurist regarding obtaining an arrest warrant prior to going over Mr. Maddox's house?" the detective replied, "[t]hat's not our policy. That's not how we do things." "No we didn't." Taken at face value, these statements show an appalling disregard of the law. In fairness to the detective, however, he may have been suggesting that the detectives did not personally file for arrest warrants and that it is someone else's responsibility. But even if that is a reasonable interpretation of what the detective meant, it does not aid the state's argument.

{¶14} The state argued, and the trial court found, that the police had probable cause to arrest Maddox and that exigent circumstances existed to justify the warrantless

arrest. While the matter of probable cause to arrest is not in dispute in this case, the law is clear that probable cause alone does not justify a warrantless intrusion into the home absent a few limited exceptions with exigent circumstances being one of them. There were no exigent circumstances in this case. The undisputed facts show that three days elapsed from the day of the break-in to when the police arrested Maddox: more than a sufficient amount of time to obtain an arrest warrant.

{¶15} The occupant of a home is entitled to open a door for the sole purpose of identifying who is at the door without waiving the right to privacy in the home. By entering without an arrest warrant, the police violated the sanctity of the home and violated the Fourth Amendment. The court erred by denying the motion to suppress.

{¶16} This cause is reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
PATRICIA ANN BLACKMON, J., CONCUR